1
2
3
4
5
6
7
8                  UNITED STATES DISTRICT COURT

9                  CENTRAL DISTRICT OF CALIFORNIA

10

11   JOHN C.,                          )   Case No. CV 15-9411-SP
                                       )
12                   Plaintiff,        )
                                       )
13           v.                        )   MEMORANDUM OPINION AND
                                       )   ORDER
14                                     )
     NANCY A. BERRYHILL, Deputy        )
15   Commissioner for Operations of Social )
     Security Administration,          )
16                                     )
                     Defendant.        )
17                                     )
     _____ )
18

19

20                              **I.**

21                         <u>**INTRODUCTION**</u>

22           On December 4, 2015, plaintiff John C. filed a complaint against defendant,

23   the Commissioner of the Social Security Administration ("Commissioner"),

24   seeking a review of a denial of a period of disability, disability insurance benefits

25   ("DIB"), and Supplemental Security Income ("SSI").

26           Plaintiff presents what amount to three issues for decision: (1) whether the

27   Administrative Law Judge ("ALJ") improperly assessed certain medical opinion

28

                                        1

evidence in her residual functional capacity ("RFC") determination; (2) whether the ALJ improperly assessed plaintiff's RFC by failing to account for his mental limitations in the ALJ's hypothetical to the vocational expert ("VE"); and (3) whether the ALJ improperly discounted plaintiff's credibility. Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 10-22; Defendant's Memorandum in Support of the Answer ("D. Mem.") at 1-19.

Having carefully studied the parties' papers, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ erred by improperly assessing plaintiff's RFC based on certain of the medical opinion evidence, by failing to account for plaintiff's mental limitations in her hypothetical to the VE, and by improperly determining plaintiff's testimony was incredible. The court therefore remands this matter to the Commissioner in accordance with the principles and instructions set forth in this Memorandum Opinion and Order.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff was twenty-four years old on his alleged disability onset date. AR at 85, 96. He has a high school diploma and past relevant work as a store laborer. *Id.* at 62, 75.

On October 4, 2012, plaintiff filed an application for disability, DIB, and SSI. *Id.* at 85, 96. Plaintiff alleged disability primarily due to complaints of chronic interstitial cystitis, attention deficit disorder, chronic pelvic pain, chronic acid reflux, anxiety and depression, and general pain in his thighs, hips, and back. *Id.* at 85, 96, 237. The Commissioner denied plaintiff's applications initially and upon reconsideration, after which he filed a request for a hearing. *Id.* at 135-39, 144-49, 155.

On July 8, 2014, plaintiff, telephonically represented by counsel, appeared and testified at a hearing before the ALJ. *Id.* at 61-75. The ALJ also heard testimony from VE Dr. Kelly Bartlett. *Id.* at 75-79. On August 5, 2014, the ALJ denied plaintiff's claim for benefits. *Id.* at 12-23.

Applying the well-known five-step sequential evaluation process (*see id.* at 13-14), the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity since February 16, 2008, the alleged onset date. *Id.* at 15.

At step two, the ALJ found plaintiff suffered from the following severe impairments: interstitial cystitis with urinary frequency and chronic abdominal pain, borderline atrophic kidneys, gastroesophogeal reflux disease ("GERD"), and adjustment disorder. *Id.*

At step three, the ALJ found that plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 ("Listing"). *Id.* at 18. The ALJ specifically noted the medical evidence record supported this finding, although she also found plaintiff had moderate restrictions in maintaining concentration, persistence, or pace. *Id.*

The ALJ then assessed plaintiff's RFC,[1] determined plaintiff had the RFC to perform light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), with the limitations that he: is limited to occasional climbing, stooping, kneeling, crouching, and crawling; is able to engage in frequent balancing; and is limited to unskilled or simple, repetitive tasks. AR at 19.

---

[1] Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

3

The ALJ found, at step four, that plaintiff was unable to perform his past relevant work as a store laborer because that work required performance of medium work. *Id.* at 21.

At step five, informed by the testimony of the VE, the ALJ found there were jobs, such as cashier or cleaner, that existed in significant numbers in the national economy that plaintiff could perform. *Id.* at 22. Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined in the Social Security Act. *Id.* at 23.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-3. The ALJ's decision stands as the final decision of the Commissioner.

## III.

## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's

finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Id.* The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'" *Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)). If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'" *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 ((9th Cir. 1992)).

## IV.

## DISCUSSION

**A.      The ALJ Improperly Assessed Part of the Medical Opinion Evidence**

Plaintiff asserts the ALJ erred because she omitted or mischaracterized evidence in the record to reach her RFC conclusion, in that she failed to incorporate certain medical opinion evidence favorable to plaintiff. P. Mem. at 14-16. Plaintiff additionally argues the ALJ failed to properly weigh and address certain medical opinions. *Id.* at 18-20.

### 1.      Diagnosis and Treatment History

The dispute in this action concerns plaintiff's interstitial cystitis physical impairment and adjustment disorder mental impairment, both of which impairments the ALJ found to be severe.

In November 2007, plaintiff was first thought to have interstitial cystitis. *See* AR at 430. This diagnosis was confirmed in January 2008. *Id.* at 428. Numerous reports indicated plaintiff had difficulty urinating easily and without pain. *See id.* at 388, 395. Between October and December 2008, plaintiff underwent surgery to insert a pulse generator, designed to stimulate his bladder, in an attempt to ease his severe urinary urgency, frequency, and pelvic pain. *Id.* at 317-18, 319-22. The surgeries were advised in light of plaintiff's significant

suprapubic and perineal pain, with plaintiff reporting his need to urinate every 1-2 hours. *Id.* at 310-12. The pulse generator was removed in July 2009, however, because it was ineffective. *Id.* at 315-16.

Plaintiff was diagnosed with anxiety in February 2010. *Id.* at 380.

### 2. __The Medical Opinions and Records__

#### a. __Treating Physicians__

Dr. Shashi Reddy, a urologist, treated plaintiff from May 2007 until May 2010. *See generally id.* at 423-34. Dr. Reddy first believed plaintiff had chronic interstitial cystitis on November 2, 2007, and later confirmed this diagnosis on January 22, 2008. *Id.* at 428, 430. Dr. Reddy performed a cystoscopy, hydrodistension, bladder biopsy, and fulguration on plaintiff on March 28, 2008. *Id.* at 376-77, 448-49.

Dr. Daniel Ghiyam was plaintiff's treating physician from around May 2008 until February 2010. *See generally id.* at 378-95. Plaintiff variously presented to Dr. Ghiyam with complaints of bladder pain, acid reflux, stomach issues, or abdominal pain. On February 4, 2010, Dr. Ghiyam diagnosed plaintiff with anxiety, and he prescribed plaintiff with Celexa and Ativan. *Id.* at 378-79, 380. On March 8, 2011, plaintiff returned to Dr. Ghiyam reporting ongoing abdominal pain, suprapubic pain, dysuria, and a decreased urinary stream. *Id.* at 456. Dr. Ghiyam noted a physical exam for plaintiff was normal, assessed plaintiff for interstitial cystitis, GERD, dysuria, and low back pain, and referred him to a urologist, physical therapist, and gastroenterologist. *Id.* at 456-57. Dr. Ghiyam noted plaintiff had no unusual anxiety or evidence of depression. *Id.* at 456.

Dr. Sholomo Raz, a urologist, first met plaintiff on September 2, 2008 in consultation for plaintiff's chronic pelvic pain. *Id.* at 310-12. Plaintiff was referred to Dr. Raz by Dr. Ghiyam. Dr. Raz noted plaintiff's history of urinary issues, as well as a prior cystoscopy which had made his pain significantly worse.

*Id.* at 310. At this initial meeting, plaintiff reported no back pain and thigh pain only when his bladder pain was severe. *Id.* at 311. Plaintiff was also not in any acute distress. *Id.* On October 30, 2008, December 22, 2008, and July 20, 2009, Dr. Raz performed three related surgeries to insert, and later remove, a pulse generator in an attempt to alleviate plaintiff's pelvic pain and bladder issues. *See generally id.* at 315-20. The surgery implanted a stimulator but it was removed because it did not work. On December 4, 2008, Dr. Raz noted a review of plaintiff's systems was generally within normal limits, except for his pelvic pain and GERD. *Id.* at 313-14. Plaintiff also was noted for anxiety. *Id.* at 314.

Dr. Robert Moghimi, a gastroenterologist, treated plaintiff beginning on September 4, 2009. Dr. Moghimi diagnosed plaintiff with GERD and noted his abdominal pain. *Id.* at 329-30. Dr. Moghimi referred plaintiff for examinations and laboratory reports relating to the abdominal pain complaints. On November 3, 2009, plaintiff presented to Dr. Moghimi with abdominal pain and reflux to undergo an esophagogastroduodenoscopy ("EGD") with biopsy procedure. *Id.* at 372-73.

Dr. Khristina Mueller treated plaintiff from September 2013 through July 2014 at the Moorpark Family Medical Clinic. *Id.* at 501-20. Dr. Mueller opined on July 3, 2014 that plaintiff suffered severe anxiety associated with his interstitial cystitis, along with moderate depression and sleep interruption. *Id.* at 503. On April 9, 2014, Dr. Mueller noted plaintiff was taking Lorazepam for his anxiety, Tramadol to satisfactorily control his pain relating to interstitial cystitis, and Prilosec to control his reflux disease. *Id.* at 507-08. Dr. Mueller ordered plaintiff to take Omeprazole. *Id.* at 508. In March 2014, plaintiff's anxiety was deemed stable on Lorazepam, though his chronic interstitial cystitis was painful. *Id.* at 510. During Dr. Mueller's initial meeting with plaintiff, she noted plaintiff had "essentially exhausted most treatment options." *Id.* at 516.

### b. **Examining Physicians**

In January 2010, Dr. Jagvinder Singh, a doctor of internal medicine, performed a consultation based on a review of plaintiff's medical records. *See id.* at 341-47. Dr. Singh diagnosed plaintiff with interstitial cystitis, GERD, and tachycardia. *Id.* at 345. Dr. Singh opined that plaintiff was able to stand and walk for about six hours, sit without restriction, and lift and carry 25 pounds occasionally and 10 pounds frequently. *Id.* Dr. Singh noted plaintiff had no postural or manipulative restrictions, though he had an environmental restriction that required frequent trips to the restroom. *Id.*

On February 13, 2010, Dr. Sharmin Jahan, a psychiatrist, examined plaintiff to assess whether a mental impairment affects his functioning. *See id.* at 348-54. Plaintiff had complained he experienced symptoms of depression and anxiety due to his recurrent interstitial cystitis, as he suffered from panic attacks if he needed to use the restroom due to the pain-burning sensation he felt while urinating in public places. *Id.* at 349. Plaintiff had developed a poor appetite, lost approximately 24 pounds from the time he was diagnosed to the date of the evaluation, and experienced difficulty sleeping. *Id.* Dr. Jahan noted plaintiff was able to eat, dress, and bathe independently, perform household chores, errands, shopping and cooking, and manage his own money. *Id.* Plaintiff's appearance, thought process, thought content, concentration, and orientation were intact. *Id.* at 350. Dr. Jahan diagnosed plaintiff with a Global Assessment of Functioning ("GAF") score of 60/100, which corresponds to moderate symptoms of mental illness. *Id.* at 351. Dr. Jahan assessed plaintiff to have symptoms of depression and anxiety which had markedly limited and impaired his personal, social, and occupational life, but that it was reasonable to expect that, with appropriate treatment, plaintiff would be able to maintain a suitable job. *Id.*

Plaintiff presented to Dr. Lauren Thomas, Psy.D, for a comprehensive psychiatric evaluation on February 24, 2013. *Id.* at 487-91. Plaintiff was then taking Ativan as medication for his anxiety. *Id.* at 488. Dr. Thomas noted plaintiff's depression and anxiety did not prevent him from performing any activities of daily living, and his concentration, persistence, and pace were within normal limits. *Id.* Likewise, plaintiff's attitude, behavior, and stream of mental activity were within normal limits. *Id.* at 489. Despite past reported feelings of hopelessness and suicidal ideation, plaintiff's mood and affect also appeared within normal limits. *Id.* Plaintiff did exhibit very mild impairment as to concentration, and a lack of abstract thinking. *Id.* Plaintiff was diagnosed with a GAF score of 60. *Id.* Dr. Thomas determined plaintiff could perform simple and repetitive tasks, but he was mildly to moderately impaired in his ability to perform detailed and complex tasks. *Id.* at 491. Dr. Thomas found plaintiff could work on a consistent basis without interruptions due to any psychiatric conditions. *Id.*

### c. Non-Examining Physicians

On March 19, 2010, Dr. J. Linder, a non-examining state physician, reviewed plaintiff's medical records and assessed his RFC. *Id.* at 406-10. Dr. Linder found plaintiff could occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds, and stand, walk, and sit about six hours during a workday. *Id.* at 407. Dr. Linder further opined plaintiff had no pushing or pulling limitations in his extremities, and he could frequently balance and occasionally climb, stoop, kneel, crouch, and crawl. *Id.* at 407-08. He found plaintiff did not have any manipulative, visual, communicative, or environmental limitations. *Id.* at 408-09. Based on these assessments, Dr. Linder opined plaintiff had the RFC to perform light work. *Id.* at 410.

On March 24, 2010, Dr. Anna Franco, Psy.D, a non-examining state physician, reviewed plaintiff's medical records and assessed his RFC upon a

psychiatric review. *Id.* at 411-21. Dr. Franco opined plaintiff had a non-severe mental impairment along with a coexisting non-mental medical impairment. *Id.* at 411. Dr. Franco specifically opined plaintiff had adjustment disorder and depressive disorder. *Id.* at 414. With regard to functional limitations, Dr. Franco found plaintiff had no restrictions of activities of daily living, no difficulties in maintaining social functioning, and no repeated episodes of decompensation, but plaintiff did have mild limitation in maintaining concentration, persistence, or pace. *Id.* at 419. On June 12, 2013, Dr. Franco reiterated that plaintiff's impairments were non-severe. *Id.* at 117-18, 129-30.

Dr. A. Garcia, also a non-examining state physician, reviewed plaintiff's records on March 13, 2013. Dr. Garcia also opined plaintiff's impairments were non-severe and did not significantly limit his physical or mental ability to perform basic work activities. *Id.* at 103-04.

Two other state agency physicians, Dr. R. Fast and Dr. A. Nasrabadi, reviewed plaintiff's treatment records and opined plaintiff did not have any physical or mental impairments that would significantly limit his ability to perform basic work activities. Dr. Fast and Dr. Nasrabadi determined plaintiff's impairments would not be expected to reduce his exertional capacity, as the impairments were non-severe. *Id.* at 93-94, 104-05, 118-20, 130-32.

### 3. The ALJ's Findings

Based on her reading of the medical evidence, the ALJ determined plaintiff had the RFC to perform light work, but with the following limitations: he could occasionally climb, stoop, kneel, crouch, and crawl; he could engage in frequent balancing; and he was limited to unskilled or simple, repetitive tasks. *Id.* at 19. In reaching her RFC determination, the ALJ discussed portions of the findings of various physicians, but did not expressly state what weight, if any, she gave to any of the physicians' opinions. *See id.* at 21. The ALJ found a mental limitation to

simple, repetitive work was appropriate, apparently based in part on the opinions of Dr. Jahan and Dr. Thomas, who, according to the ALJ, "did not report any significant findings and . . . both assessed GAF scores of 60, which indicates only mild impairment in functioning." *Id.* The ALJ also noted the state agency psychiatric consultant, Dr. Franco, opined plaintiff did not have a severe mental disorder. *Id.* The ALJ dismissed plaintiff's depression and anxiety conditions as "unremarkable," and noted plaintiff had "not sought or received mental health care. His only treatment to relieve anxiety is smoking marijuana daily. He is not taking medication and undergoing pyschotherapy." *Id.*

As to plaintiff's physical limitations, the ALJ did not adopt the opinions of two state agency physicians, Dr. Fast and Dr. Nasrabadi, or those of treating physicians Dr. Ghiyam, Dr. Reddy, and Dr. Moghimi, since these physicians opined plaintiff did not have any functional limitations. *See id.* The ALJ appeared to give greater, but unspecified, weight to Dr. Mueller, Dr. Linder, and Dr. Singh, who each opined plaintiff could perform a light range of work "with a few additional limitations such as frequent bathroom breaks and a limitation to occasional climbing, stooping, kneeling, crouching, and crawling." *Id.* The ALJ deemed the range of light work to be "the most restrictive limitations imposed on the claimant in the record," and adopted these limitations. *Id.*

**4.** **The ALJ Erred in Part in Her Assessment of the Opinions of Dr. Mueller and Dr. Jahan**

The ALJ has a duty to consider all relevant medical evidence to reach an RFC determination. *See* 20 C.F.R. § 404.1545(a)(1) (it is the responsibility of the ALJ to reach an RFC determination by reviewing and considering all of the relevant evidence). In evaluating medical opinions, the regulations distinguish among three types of physicians: (1) treating physicians; (2) examining physicians; and (3) non-examining physicians. 20 C.F.R. § 416.927(c), (e); *Lester v. Chater*,

81 F.3d 821, 830 (9th Cir. 1995). "Generally, a treating physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 416.927(c)(1)-(2). The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant. *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989). "Although it is within the power of the [Commissioner] to make findings . . . and to weigh conflicting evidence, [the ALJ] cannot reach a conclusion first, and then attempt to justify it by ignoring competent evidence in the record that suggests an opposite result. *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984) (internal citation omitted).

The ALJ is not bound by the opinion of the treating physician. *Smolen*, 80 F.3d at 1285. If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight. *Lester*, 81 F.3d at 830. If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. *Id.* Likewise, the ALJ must provide specific and legitimate reasons supported by substantial evidence in rejecting the contradicted opinions of examining physicians. *Id.* at 830-31. The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1066 n.2 (9th Cir. 2006); *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).

Plaintiff here argues the ALJ failed to properly assess the opinions of Dr. Mueller and Dr. Jahan. While the ALJ noted certain portions of their respective findings in determining plaintiff's RFC, the ALJ did not expressly weigh these

physicians' opinions.  Indeed, the ALJ did not assign any relative weights to the opinions of any physician.

### a. Mental RFC

The ALJ erred in her determination of plaintiff's mental RFC by improperly assessing the opinions of Dr. Jahan and Dr. Mueller.  First, the ALJ mischaracterized plaintiff's GAF score as determined by Dr. Jahan and Dr. Thomas.  Though both physicians assessed a score of 60, this indicates moderate, not mild, impairment in functioning.[2]  *See* American Psychiatric Association, Diagnostic & Statistical Manual of Mental Disorders 34 (4th ed. 1994); *see also Garrison v. Colvin*, 759 F.3d 995, 1002 n.4 (9th Cir. 2014) (noting that according to the DSM-IV, "[a] GAF score between 51 to 60 describes "moderate symptoms" or any moderate difficulty in social, occupational, or school functioning" and that GAF scores may be a "useful measurement" to determine a claimant's level of disability).  Dr. Jahan's functional assessment even noted plaintiff had depression and anxiety symptoms and "marked limitation and impairment of his personal, social and occupational life."  AR at 351.  Significantly, the ALJ omitted mention of the "marked limitation and impairment" finding in her discussion of the record.  *See id.* at 16.  The ALJ also incorrectly stated plaintiff only relied on marijuana to treat his mental health issues and "did not allege any other treatment for his mental health symptoms."  *Id.*  Plaintiff in fact received ongoing treatment for his mental health issues by way of prescription medication, with Dr. Jahan noting plaintiff took antidepressant and anxiety medication in his evaluation.  *Id.* at 349.

---

[2]  Dr. Thomas also inaccurately characterized a GAF score of 60 as indicating "mild impairment in functioning."  AR at 490.  Dr. Thomas's assessment that plaintiff could perform work on a consistent basis if limited to simple and repetitive tasks may thus be undermined by her own misstatement of plaintiff's GAF score finding.

The ALJ also did not address the mental health findings of Dr. Mueller.  Dr. Mueller frequently noted plaintiff's history of anxiety relating to his urinary issue, provided prescription treatment, and determined plaintiff suffered from moderate depression and severe anxiety due to his bladder condition.  *See generally id.* at 502-17.  While the ALJ discussed some of Dr. Mueller's findings with respect to plaintiff's physical limitations, she did not discuss Dr. Mueller's mental findings.  *See id.* at 17-18, 20-21.  Further, even though Dr. Mueller found plaintiff's anxiety was stable on Lorazepam (*id.* at 510, 513), it does not necessarily follow that his anxiety condition had improved to the extent that plaintiff could function in the workplace.  *See Kohler v. Astrue*, 546 F.3d 260, 268 (2d Cir. 2008) (evidence that a claimant's medical condition is stable does not necessarily mean that a claimant can work or that her medical condition has improved).  While the ALJ apparently relied on the findings of state physician Dr. Franco to support her mental RFC determination, this opinion alone does not constitute substantial evidence to discount the opinions of examining physician Dr. Jahan and treating physician Dr. Mueller.[3]

Thus, the ALJ's implicit rejection of portions of Dr. Jahan and Dr. Mueller's opinions – which the ALJ accomplished by way of misrepresentation or omission, and without setting forth specific, legitimate reasons to reject them – constitutes error.  *See Garrison*, 759 F.3d at 1012-13.

### b.    **Physical RFC**

With regard to plaintiff's physical RFC limitations, the court also considers whether Dr. Mueller's opinions have been properly assessed.  As noted above, Dr.

---

[3]    The ALJ briefly mentioned during her development of the record that Dr. Ghiyam, who initially diagnosed plaintiff with anxiety, later reported he had no mental health symptoms.  *See* AR at 16.  But the ALJ did not expressly refer to Dr. Ghiyam's opinions when weighing the entire record relating to plaintiff's mental limitations.

Mueller was plaintiff's treating physician, and an ALJ must provide specific and legitimate reasons when rejecting a treating physician's opinion and findings. *See Smith v. Astrue*, 2011 WL 5294848, at *4 (N.D. Cal. Nov. 3, 2011) ("Although the treating physician's opinion is not necessarily conclusive as to either a physical condition or the ultimate issue of disability, an ALJ must provide 'specific and legitimate reasons for rejecting the opinion of the treating physician.'") (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

The court rejects defendant's contention that Dr. Mueller's opinion stating plaintiff could occasionally lift 20 pounds and frequently lift 10 pounds necessarily indicates he can perform light work. *See* D. Mem. at 10-11. Notably, Dr. Mueller found she was "unable to comment specifically on [the amount] of time [plaintiff] can sit or stand in [a] day but he does report some [increase] in sciatic pain [due to] excessive standing/sitting." AR at 504. Dr. Mueller further opined plaintiff should see an occupational medicine or disability doctor to evaluate these areas if further information was required. *Id.* While Dr. Mueller did endorse the lifting limitations despite finding plaintiff had severe to extreme urinary urgency and pain, she notably declined to opine on how many hours plaintiff could work each day. *See id.* at 501-04. The ALJ ignored Dr. Mueller's opinions that plaintiff had severe to extreme pain in his legs, thighs, calves, testes, anus, and abdomen. *See id.* at 502. Further, the ALJ did not acknowledge Dr. Mueller's note that plaintiff had "essentially exhausted most treatment options," or that his interstitial cystitis was chronic and painful. *Id.* at 508-10.

An ALJ may reject a physician's opinion if it is inconsistent with the medical findings and opinions reported by other sources. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1110, 1195 (9th Cir. 2004). Where, as here, a treating physician's opinion is contradicted by another doctor, the ALJ must provide specific and legitimate reasons supported by substantial evidence in the record in

order to reject the treating physician's opinion. *Lester* , 81 F.3d at 830. "This can be done by setting out a detailed and thorough summary of the facts and conflicting evidence, stating [the ALJ's] interpretation thereof, and making findings." *Magallanes*, 881 F.3d at 751.

Although Dr. Mueller's findings do not fully support the ALJ's physical RFC determination, they also do not undermine it. At the same time, the ALJ also cites the opinion of examining physician Dr. Singh to support her finding that plaintiff could perform light work. *See* AR at 21. The opinion of an examining physician based on independent clinical findings constitutes substantial evidence. *See Orn*, 495 F.3d 625, 631 (9th Cir. 2007). Dr. Singh opined in January 2010 that plaintiff could stand and walk for about six hours, sit without restriction, lift 25 pounds occasionally and 10 pounds frequently, and only had the environmental limitation requiring frequent trips to the restroom. AR at 345. The ALJ fairly concluded Dr. Singh's functional assessment indicated a capacity to perform light work. The opinions of Dr. Singh do not necessarily contradict those of Dr. Mueller; indeed, they support some of Dr. Mueller's functional assessment. But even if the ALJ did not properly weigh Dr. Mueller's opinions, Dr. Singh's conclusions provide specific and legitimate reasons supported by substantial evidence to support the ALJ's physical RFC determination. State agency physician Dr. Linder's opinions were consistent with those of Dr. Singh and therefore constitute substantial evidence. *See Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002) (opinions of non-examining physicians "serve as substantial evidence when the opinions are consistent with independent clinical findings or other evidence in the record"). The ALJ therefore did not err in failing to properly assess Dr. Mueller's opinions.

In sum, the ALJ erred by misstating or rejecting portions of the mental limitations found by Dr. Jahan and Dr. Mueller, without providing specific and

legitimate reasons supported by substantial evidence for doing so. On remand, the ALJ must reevaluate her RFC determination as it pertains to plaintiff's mental limitations and accurately characterize and discuss Dr. Jahan and Dr. Mueller's respective opinions, including analyses of plaintiff's anxiety and depression impairments, and either accept those opinions or provide legally sufficient reasons to reject them. The ALJ did not err with respect to Dr. Mueller's findings as to plaintiff's physical limitations. Nonetheless, on remand, the ALJ must clearly state the weight given to all the relevant physicians' opinions, and she must fairly and accurately consider those opinions.

**B.** **The ALJ Erred in Relying on and Mischaracterizing the Vocational Expert Testimony**

Plaintiff contends the ALJ erred in relying on the testimony of the vocational expert in two respects. First, he argues the ALJ posed an incomplete hypothetical to the VE. And second, he argues the ALJ misstated certain of the VE's testimony.

RFC is what one can "still do despite [his or her] limitations." 20 C.F.R. § 404.1545(a)(1)-(2). The ALJ reaches an RFC determination by reviewing and considering all of the relevant evidence, including non-severe impairments. *Id.*; *see* SSR 96-8p ("In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not 'severe.'"). When the record is ambiguous, the Commissioner has a duty to develop the record. *See Webb v. Barnhart*, 433 F.3d 683, 687 (9th Cir. 2005); *see also Mayes*, 276 F.3d at 459-60 (ALJ has a duty to develop the record further only "when there is ambiguous evidence or when the record is inadequate to allow for proper evaluation of the evidence"); *Smolen*, 80 F.3d at 1288 ("If the ALJ thought he needed to know the basis of [a doctor's] opinion [] in order to evaluate [it], he had a duty to conduct an appropriate inquiry, for example, by subpoenaing the physician [] or submitting further questions to [him or her]."). This may include

retaining a medical expert or ordering a consultative examiner. 20 C.F.R. § 404.1519a(a). The Commissioner may order a consultative examination when trying to resolve an inconsistency in evidence or when the evidence is insufficient to make a determination. 20 C.F.R. § 404.1519a(b).

The ALJ is not required to obtain testimony from a vocational expert at step four, but the ALJ did so here. *See Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (vocational expert's testimony is useful at step four, but not required). "If a vocational expert's hypothetical does not reflect all the claimant's limitations, then the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy." *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (quoting *Matthews*, 10 F.3d at 681 (internal quotation marks and citation omitted); *see also Edlund v. Massanari*, 253 F.3d 1152, 1160 (9th Cir. 2001) (same and citing additional authority).

### 1. The ALJ Posed an Incomplete Hypothetical

Plaintiff contends the ALJ erred by giving an incomplete hypothetical to the VE, in that the ALJ failed to include certain moderate limitations she found at step three. P. Mem. at 10-13. Defendant responds by arguing plaintiff conflates the step three analysis with the RFC analysis. D. Mem. at 1-8. At step three, the ALJ found plaintiff had moderate difficulties in maintaining concentration, persistence, or pace. AR at 18. In line with her RFC determination that plaintiff is limited to simple, repetitive tasks, the hypothetical the ALJ posed to the VE here limited the individual to simple, routine tasks, but did not otherwise address any mental limitations. *See id.* at 19, 76.

Two Ninth Circuit cases provide guidance. In *Stubbs-Danielson v. Astrue*, 539 F.3d 1169, 1173 (9th Cir. 2008), the Ninth Circuit held that an ALJ's limitation to simple, routine, repetitive work adequately captured the claimant's deficiencies in pace because a physician opined plaintiff had a slow pace, both in

thinking and action, but was able to carry out simple tasks.  In other words, an "ALJ's assessment of a claimant adequately captures restrictions related to concentration, persistence, or pace where the assessment is consistent with restrictions identified in the medical testimony." *Id.* at 1174.  By contrast, in an unpublished decision one year later, *Brink v. Comm'r*, 343 Fed. Appx. 211, 212 (9th Cir. 2009), the Ninth Circuit held that the phrase "simple, repetitive work" did not encompass plaintiff's difficulties with concentration, persistence or pace, noting that the ALJ there failed to equate the two.  This was clear from the ALJ's hypotheticals in that case – he posed one referencing only the simple, repetitive work limitation and another incorporating the additional limitation of moderate to marked attention and concentration deficits.  *Id.*  The court found *Stubbs-Danielson* distinguishable, as in *Stubbs-Danielson* the medical testimony did not establish any limitation in concentration, persistence, or pace, whereas in *Brink* the ALJ accepted that the claimant had difficulties with concentration, persistence, or pace.  *Id.*

This case is like *Brink*.  The ALJ found plaintiff had moderate difficulties with concentration, persistence, or pace at step three, but did not include any such limitation in the hypothetical posed to the VE.  Instead, the ALJ only included a restriction to unskilled or simple, routine tasks.  *See* AR at 76.  The court finds *Brink*'s reasoning is persuasive here.  As in *Brink*, the ALJ here erred because the hypothetical posed to the VE did not reflect the findings at step three relating to plaintiff's moderate limitation in maintaining concentration, persistence, or pace. *See also Willard v. Colvin*, 2016 WL 237068, at *3 (C.D. Cal. Jan. 20, 2016) ("But the Ninth Circuit has held that when the medical evidence establishes and the ALJ accepts that the claimant has moderate limitation in maintaining concentration, persistence, and pace, that limitation must be reflected in the Plaintiff's RFC and in the hypothetical presented to the vocational expert."); *Janovich v. Colvin*, 2014

WL 4370673, at *7 (E.D. Cal. Sept. 2, 2014) (when the ALJ finds at step three that medical evidence in the record established that plaintiff had moderate difficulties in maintaining concentration, persistence, or pace, *Stubbs-Danielson* does not control).

Here, Dr. Thomas noted plaintiff had the ability to perform simple, repetitive tasks on a sustained basis in a work environment. AR at 491. State agency physicians agreed that plaintiff did not have a severe mental impairment. *Id.* at 91-94, 102-05, 117-20, 129-32. Yet Dr. Jahan opined plaintiff had "marked limitation and impairment" in his personal, social, and occupational life. *Id.* at 351. Further, plaintiff's GAF score of 60 represented "moderate symptoms or difficulty" in social and occupational functioning. *See* DSM-IV at 34. Defendant argues that the ALJ made a mere "rounding error" in mischaracterizing his GAF score as reflecting mild, instead of moderate, impairment. D. Mem. at 18; *see* AR at 16, 17, 21 (ALJ's decision stated "Dr. Jahan and Dr. Thomas did not report any significant findings and they both assessed GAF scores of 60, which indicates only *mild* impairment in functioning.") (emphasis added). This argument is not well-taken, since the distinction between mild and moderate is an important one when determining whether a claimant has mental limitations. Further, the ALJ found plaintiff had moderate, not mild, restrictions in concentration, persistence, and pace. Thus, since the ALJ failed to include the moderate restrictions she found at step three in any hypothetical posed to the VE, her reliance on the VE's testimony for her step five finding was in error.

### 2. The ALJ Misstated the VE's Testimony

The ALJ also erred by misstating testimony provided by the VE relating to plaintiff's need to frequently use the restroom. *See Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1297 (9th Cir. 1999) (ALJ's rejection of claimant's testimony was not supported by substantial evidence in the record where ALJ

inaccurately characterized evidence).  The ALJ attributed to the VE testimony

concerning how many restroom breaks an employer would tolerate.  The ALJ

stated, "The [VE] also testified that employers would at least tolerate . . . six

bathroom breaks daily [of 15-minute duration]."  AR at 20.  The VE did not so

testify.

> Plaintiff's Counsel: If that break was at least even 10 to 15 minutes
>
> long would that be tolerated every time the person had to go [to the
>
> restroom]?
>
> VE: And how many times a day?
>
> Plaintiff's Counsel: Five times a day.
>
> VE: Right, well, five times 10 minutes would be the 50 minutes.  It
>
> would be over the limit of 10 percent.
>
> Plaintiff's Counsel: So, my mathematics is completely squirrely here.
>
> ALJ: For less than five breaks at 10 minutes a break and at 15 minutes
>
> a break, you would then be down to approximately three.

*Id.* at 78.

Defendant rationalizes that the ALJ merely was factoring in a morning,

lunch, and afternoon break in addition to three breaks of approximately 15 minutes

each.  D. Mem. at 10-11 n.6.  But the court cannot rely on defendant's explanations

for the ALJ's decision because the court can only review the reasons actually

provided by the ALJ in the disability determination.  *See Orn*, 495 F.3d at 630

("We review only the reasons provided by the ALJ in the disability determination

and may not affirm the ALJ on a ground upon which he did not rely.") (citation

omitted).  The VE never indicated an employer would tolerate six 15-minute

breaks during the day.  Though the VE earlier testified that the morning, lunch, and

afternoon breaks were "routine breaks" that a worker could use in addition to

taking 10 percent of the remaining day off task (*see* AR at 76-77), this does not

necessarily mean the VE agreed that an employee can take three 15 minute-long breaks in addition to the routine breaks. Even if the ALJ explained this reasoning, and assuming it is possible the VE would so conclude, the VE did not so testify.

The ALJ must reconsider the evidence and reassess plaintiff's RFC. If she relies on vocational expert testimony given in response to a hypothetical, the hypothetical must fully reflect all of plaintiff's determined limitations. Further, the ALJ's reliance on VE testimony must accurately reflect that testimony.

**C.** **The ALJ Did Not Offer A Clear and Convincing Reason for Discounting Plaintiff's Credibility**

Plaintiff additionally argues the ALJ erred in her determination of plaintiff's credibility. P. Mem. at 16-18, 20-22. Specifically, plaintiff contends his purportedly conservative treatment for his mental health issues did not amount to substantial evidence to reject his credibility. *Id.* at 16-18. Plaintiff also asserts the ALJ improperly relied on plaintiff's activities of daily living in making her credibility finding. *Id.* at 20-22.

The ALJ must make specific credibility findings, supported by the record. Social Security Ruling ("SSR") 96-7p.[4] To determine whether testimony concerning symptoms is credible, the ALJ engages in a two-step analysis. *Trevizo v. Berryhill*, 862 F.3d 987, 1000 (9th Cir. 2017) (citing *Garrison*, 759 F.3d at 1014-15). First, the ALJ must determine whether a claimant produced objective medical evidence of an underlying impairment that could reasonably be expected to produce the symptoms alleged. *Id.* Second, "[i]f such evidence exists and there

---

[4]    "The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. We will not defer to SSRs if they are inconsistent with the statute or regulations." *Holohan*, 246 F.3d at 1203 n.1 (internal citations omitted).

is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so," and those reasons must be supported by substantial evidence in the record. *Id.*; *Carmickle v. Comm'r of Soc. Sec.*, 533 F.3d 1155, 1161 (9th Cir. 2008).

An ALJ may consider several factors in weighing a claimant's credibility at the second step, including: ordinary techniques of credibility evaluation such as a claimant's reputation for lying; the failure to seek treatment or follow a prescribed course of treatment; and inconsistencies with the claimant's testimony or between the testimony and claimant's daily activities. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *Bunnell v. Sullivan*, 947 F.2d 341, 346-47 (9th Cir. 1991); *Ynzunza v. Astrue*, 2010 WL 3270975, at *3 (C.D. Cal. Aug. 17, 2010). But "subjective pain testimony cannot be rejected on the *sole* ground that it is not fully corroborated by objective medical evidence." *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (emphasis added) (citation omitted). The ALJ must also "specifically identify the testimony [from the claimant] that she or he finds not to be credible and . . . explain what evidence undermines the testimony." *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1102 (9th Cir. 2014) (quoting *Holohan*, 246 F.3d at 1208).

At the first step, the ALJ here found plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms alleged. AR at 21. At the second step, the ALJ found plaintiff's statements concerning the intensity, persistence, and limiting effects of his symptoms were not credible because of his daily activities, return to work in 2011, lack of objective medical findings, and lack of ongoing treatment for pain or his mental condition. *Id.* The court finds the ALJ did not provide sufficient, clear and convincing reasons for finding plaintiff's testimony not credible.

### 1. __Activities of Daily Living__

One reason the ALJ cited for finding plaintiff less credible was that his alleged symptoms were inconsistent with his reported activities of daily living.  AR at 21; *see Thomas*, 278 F.3d at 958-59 (in making a credibility determination, an ALJ may consider inconsistencies between a claimant's testimony and conduct).  The ALJ found plaintiff was "taking care of his personal needs, driving, performing household chores, running errands, shopping, cooking, and managing his finances."  AR at 21.  Inconsistency between a claimant's alleged symptoms and his daily activities may be a clear and convincing reason to find a claimant less credible.  *Tommasetti*, 533 F.3d at 1039; *Bunnell*, 947 F.2d at 346.  But "the mere fact a [claimant] has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [his] credibility as to [his] overall disability."  *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001).  A claimant does not need to be "utterly incapacitated."  *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989).

Plaintiff's activities as reported at the hearing were consistent with his alleged physical symptoms.  Here, plaintiff testified that his impairments prevent him from working, especially the constant pain in his bladder.  AR at 64.  Function reports indicated plaintiff could perform daily activities such as taking care of his personal needs, driving, household chores, errands, shopping, cooking, and managing finances.  *Id.* at 201-04, 210-13.  At the hearing, plaintiff reiterated that he could wash dishes, do laundry, take out trash, and drive.  *Id.* at 62, 71.  That plaintiff could perform these activities, despite his ongoing abdominal pain and urinary and bladder problems, theoretically indicates he could perform light work.

Yet plaintiff also testified he needed to stop twice on the way to the hearing to urinate, including off the side of a freeway 30 minutes after he left his house.  *Id.* at 72.  Further, plaintiff stated he uses the restroom approximately 10-15 times per

day during his waking hours. *Id.* at 66-67. Plaintiff's testimony regarding his inability to drive for an extended duration without taking a restroom break to urinate and alleviate his pain is consistent with his inability to stand or walk for more than half an hour without taking a rest. *See id.* at 205, 214. Plaintiff's bladder or abdominal pain relating to his interstitial cystitis appears to limit his ability to perform daily activities for extended periods of time. Thus, while plaintiff's activities of daily living may suggest he is able to briefly perform some tasks, they do not undermine his testimonial credibility regarding his inability to work for extended durations.

## 2. **Objective Medical Record**

The ALJ also rejected plaintiff's testimony because the objective medical record did not support his complaints. *Id.* at 21. Plaintiff argues the ALJ failed to consider statements and treating notes from one of plaintiff's treating physicians, Dr. Mueller, regarding plaintiff's urinary frequency, severe pain, depression, and anxiety. P. Mem. at 5-6; *see also* Reply at 7-8. Defendant responds by asserting the record demonstrates the ALJ discussed at length the objective medical record and opinion evidence that she found undermined plaintiff's credibility. *See* D. Mem. at 16-17; AR at 15-18.

To the extent her credibility determination was based on the medical record, an ALJ "may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain," but lack of objective medical evidence may be one factor used to evaluate credibility. *Bunnell*, 947 F.2d at 345; *see Rollins*, 261 F.3d at 856-57 (asserting a lack of corroborative objective medical evidence may be one factor in evaluating credibility).

Here, one dispute between the parties concerns whether plaintiff's mental limitations were moderate such that plaintiff could not perform even unskilled,

simple, or repetitive tasks as the ALJ found.  As noted above, plaintiff's twice-assessed GAF score of 60 was objective evidence in support of his contention that he had moderate mental health limitations.  AR at 351, 490.  Dr. Jahan opined plaintiff's mood was depressed with blunted affect, and he had "marked limitation and impairment of his personal, social, and occupational life." *Id.* at 350-51.  Dr. Mueller observed plaintiff had moderate depression and severe anxiety.  *Id.* at 503.  Further, plaintiff has taken Celexa, Ativan, and Lorazepam for his anxiety since 2010.  *Id.* at 378-79, 423, 497, 508, 510, 513.  On the other hand, Dr. Franco opined plaintiff did not have a severe mental disorder, or any signs of decompensation, significant depression, or anxiety.  *Id.* at 411-21.  Dr. Ghiyam also noted plaintiff had no evidence of anxiety or depression symptoms.  *Id.* at 456.  Dr. Thomas opined plaintiff's mood, affect, content of thought, attitude, and stream of mental activity were within normal limits; however, she revealed plaintiff previously had suicidal ideation, his depression lasted for months at a time, and his anxiety resulted from his fear of needing to use the restroom in public.  *Id.* at 489.  Further, Dr. Thomas noted plaintiff's depression and anxiety were due to adjustment disorder relative to his medical issues, and they would not abate unless his medication condition improved.  *Id.* at 490-91.  As discussed above, the ALJ failed to properly consider certain of this evidence, and therefore the ALJ's reliance on her flawed assessment of this evidence does not offer reason to discount plaintiff's credibility.

Another issue concerns whether plaintiff's urinary issues required him to take restroom breaks so frequently that he could not adequately perform any work for an employer.  Defendant cites portions of the record where plaintiff's interstitial cystitis was responsive to medication, only mild tenderness in the abdominal area was observed, EGDs and biopsies revealed normal findings, and plaintiff's acid reflux disease was well-controlled.  D. Mem. at 16-17.  But these

parts of the record do not undermine relevant portions suggesting plaintiff's condition was not improving. In September 2008, Dr. Raz opined plaintiff had "longstanding bladder dysfunction and pelvic pain with significantly impacted life." AR at 311. Five years later, Dr. Mueller noted in September 2013 that plaintiff's interstitial cystitis and chronic dysuria were not amenable to any treatment despite chronicling various efforts. *Id.* at 515. Plaintiff's urinary urgency was severe and his bladder and pelvic pain was extreme. *Id.* at 502. Plaintiff's attempt to alleviate his condition by undergoing surgery to install a pulse generator failed. *Id.* at 317-20, 515. Though plaintiff's interstitial cystitis condition was responsive and apparently stabilized due to Tramadol medication, this does not suggest it was necessarily improving or effective beyond keeping plaintiff's pain at a consistent, yet still significant, threshold. Further, while biopsies and EGDs reflected normal findings, these do not undermine plaintiff's allegations of abdominal pain relating to his urinary and bladder issues.

The objective medical evidence therefore does not provide a clear and convincing reason.

### 3. Conservative Treatment

The ALJ also rejected plaintiff's testimony because of his ostensible failure to obtain ongoing treatment for his alleged pain and mental conditions. *Id.* at 21. Evidence of conservative treatment may form the basis for undermining plaintiff's credibility regarding the severity of the ailment. *Tommasetti*, 533 F.3d at 1039. An ALJ may thus discount a plaintiff's subjective complaints based on the conservative treatment he received from his physicians. *Parra v. Astrue*, 481 F.3d 742, 750-51 (9th Cir. 2007) ("evidence of 'conservative treatment' is sufficient to discount a claimant's testimony regarding severity of an impairment") (citation omitted); *Johnson v. Shalala*, 60 F.3d 1428, 1434 (9th Cir. 1995) (reasoning "conservative treatment" is indicative of "a lower level of both pain and functional

limitation"); SSR 96-7 ("the [plaintiff]'s statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints").

Plaintiff here admitted he did not go to therapy for his mental conditions. *See* AR at 65. Further, the medical record indicate plaintiff had no history of psychiatric hospitalizations or outpatient psychiatric treatment as of February 2013. *Id.* at 488. Yet plaintiff did receive ongoing treatment for his mental health issues by way of prescription medication. Plaintiff was first diagnosed with anxiety in February 2010 and began taking Celexa and Ativan soon thereafter. *Id.* at 378-80. Plaintiff's medication intake was documented in other appearances as well. *Id.* at 423, 457, 495. Plaintiff also later took Lorazepam for his anxiety issues, which appeared to stabilize the condition. *See id.* at 510, 513. Yet plaintiff still had anxiety that worsened while he urinated. *Id.* at 515; *see also id.* at 72-74.

The mere fact that plaintiff did not specifically seek therapy for his mental health issues or that he had not been hospitalized at any time does not indicate his treatment was conservative or routine. Instead, his continued taking of anxiety medications since his 2010 diagnosis suggests he has been diligent in attempting to contain or stabilize the condition. Even if plaintiff's consumption of medication was insufficient to treat his mental conditions, "it is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation." *Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996). As Dr. Thomas noted, plaintiff's depression and anxiety were "not likely to abate unless his medical condition improves." AR at 490. The purportedly conservative treatment for plaintiff's mental condition therefore does not amount to a clear and convincing reason to discount plaintiff's credibility.

### 4. **Return to Work**

Lastly, defendant cites plaintiff's three-month return to work in 2011 as a reason to discount his credibility. The ALJ stated plaintiff's "credibility was

undermined by his report of work activity after the alleged onset date," citing the three months in 2011 when he returned to work. *Id.* at 21. The ALJ may consider a claimant's work history in making a credibility determination. *See Thomas*, 278 F.3d at 959.

Plaintiff's alleged onset date for his injuries was February 16, 2008. The records indicate plaintiff attempted to return to work from August 24, 2011 until December 18, 2011. *See* AR at 221, 239. Plaintiff reported earnings of $64.16 in 2011, and $58.48 in 2012. *See id.* at 185, 187, 190, 193. During the hearing, plaintiff testified he worked for "maybe a month" after his alleged disability onset date. *Id.* at 63.

Plaintiff's return to work over three years after his disability onset date could suggest he was able to return to work and may not have been disabled. Yet, the context of the return to work suggests otherwise. As the earnings records indicate, plaintiff earned less than $125 over the course of 2011 and 2012. Given that plaintiff reported earning an hourly salary of $8.00 per hour (*see id.* at 239), this would translate to less than sixteen hours worked over several months. Plaintiff's attempt to return to work does not suggest he is incredible, but instead indicates he made an effort to return to work but failed, perhaps due to his medical conditions. *See Fair*, 885 F.2d at 604 (suggesting evidence that a claimant tried to work and failed could support claimant's allegations of disabling pain). Even the ALJ herself did not consider plaintiff's return to work to be substantial gainful employment. AR at 15 (noting plaintiff's earnings of $9,479.70 in 2008 fell "below the substantial gainful level," and his earnings in 2011 and 2012 "were below $100").

On balance, the ALJ did not reasonably find plaintiff's return to work suggested an ability to work. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1038 (9th Cir. 2007) ("It does not follow from the fact that a claimant tried to work for a

29

short period of time and, because of his impairments, *failed*, that he did not then experience pain and limitations severe enough to preclude him from *maintaining* substantial gainful employment.") (emphases in original).  As such, this was not a clear and convincing reason to discount plaintiff's credibility.

Accordingly, the ALJ improperly dismissed plaintiff's testimony because she did not provide a clear and convincing reason supported by substantial evidence for the negative credibility determination.  Neither plaintiff's activities of daily living, return to work, the objective medical record, nor plaintiff's conservative treatment provide clear and convincing reasons to discount plaintiff's credibility.

## V.

## **REMAND IS APPROPRIATE**

The decision whether to remand for further proceedings or reverse and award benefits is within the discretion of the district court.  *McAllister v. Sullivan*, 888 F.2d 599, 603 (9th Cir. 1989).  It is appropriate for the court to exercise this discretion to direct an immediate award of benefits where: "(1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinions; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Garrison*, 759 F.3d at 1020 (setting forth three-part credit-as-true standard for remanding with instructions to calculate and award benefits).  But where there are outstanding issues that must be resolved before a determination can be made, or it is not clear from the record that the ALJ would be required to find a plaintiff disabled if all the evidence were properly evaluated, remand for further proceedings is appropriate. *See Benecke v. Barnhart*, 379 F.3d 587, 595-96 (9th Cir. 2004); *Harman v. Apfel*, 211 F.3d 1172, 1179-80

(9th Cir. 2000). In addition, the court must "remand for further proceedings when, even though all conditions of the credit-as-true rule are satisfied, an evaluation of the record as a whole creates serious doubt that a claimant is, in fact, disabled. *Garrison*, 759 F.3d at 1021.

Here, as set forth above, remand is appropriate because there are outstanding issues that must be resolved before it can be determined whether plaintiff is disabled. The ALJ must reconsider and appropriately assess the opinions of plaintiff's treating physician Dr. Mueller and examining physician Dr. Jahan regarding his mental health conditions and, if appropriate, further develop the record in this regard. The ALJ must either credit Dr. Mueller and Dr. Jahan's opinions or provide adequate reasons under the appropriate legal standard for rejecting their opinions. The ALJ must also reconsider plaintiff's credibility and either credit his testimony or provide clear and convincing reasons to reject it. The ALJ must then reassess plaintiff's RFC. The ALJ must also offer a complete hypothetical to the VE, and must carefully consider the actual testimony of the VE. Thereafter, the ALJ must proceed through steps four and five to determine what work, if any, plaintiff is capable of performing.

## VI.

## CONCLUSION

IT IS THEREFORE ORDERED that Judgment shall be entered REVERSING the decision of the Commissioner denying benefits, and REMANDING the matter to the Commissioner for further administrative action consistent with this decision.

DATED: July 9, 2018

_____

SHERI PYM
United States Magistrate Judge